**John E. MOLLOY, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–749.**

United States Court of Veterans Appeals.

Nov. 6, 1996.

■■■■■■■■■■■■■■■■■

John E. Molloy, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Michael P. Butler, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed dissenting opinion.

NEBEKER, Chief Judge:

The appellant, John E. Molloy, appeals from a June 7, 1993, decision of the Board of Veterans' Appeals (Board), which determined that new and material evidence had not been submitted to reopen a claim for a back disability. For the following reasons, the Court will vacate the Board's decision and remand this matter for further proceedings consistent with this opinion.

## I.

The appellant, a World War II veteran, had active service in the U.S. Navy from October 1944 to June 1946. Record (R.) at 16. An enlistment examination was negative for any relevant abnormality. R. at 46. Service medical records do not contain any reference to a back injury. The discharge examination did not note any defects; his "[s]pine and extremities" were described as normal. R. at 41, 49. In July 1946, immediately after his separation from service, he filed his initial claim for a back injury incurred in service. R. at 18–19. In March 1947, Dan Mercier, one of the appellant's shipmates, submitted the following sworn statement: "I recollect a time back in Aug[ust] 1945 ... on board the U.S.S. Roxane (AKA–37) that [the appellant] complained of pains in his back; and also [of] having difficulty in performing his job as Coxswain...." R. at 24–25. Another ship-

mate, Henry Petel, submitted a March 1947 letter, stating that he was present when the appellant injured his back in August 1945, aboard the U.S.S. *Roxane.* R. at 28. A September 1947 VA special orthopedic examination report stated, "No orthopedic disease or residuals of injury found." R. at 70. An August 1947 record of x-ray findings contains the following notation:

The lumbar spine shows a normal alignment. The bodies of the vertebrae show cup-shaped concavities on their inferior surfaces indicative of Schmorl's nodes. No acute destructive or productive changes are noted in any of the vertebrae. The lumbo-sacral and sacro-iliac joints are within normal limits. Question of minimal increase of density along the right sacroiliac joint.

R. at 71. A "Schmorl's node" is "a spinal defect characterized by protrusion of the nucleus pulposus into the spongiosa of a vertebra." WEBSTER'S MEDICAL DESK DICTIONARY 640 (1986). An October 1947 rating decision by a VA regional office (RO) denied the claim, concluding that a back injury was "not shown by the evidence of record." R. at 74.

In February 1952, the appellant was hospitalized for back pain, diagnosed as chronic lumbosacral sprain. R. at 79. Hospital records show that the back condition was attributed, by history, to the alleged in-service back injury in August 1945, "when he was thrown against the wall when a load being hoisted swung against him injuring him in the lower tip of the spine." *Ibid.* This hospital report also contains the following notation: "X-ray of lower spine showed some roughening of the upper surface of the body of L2 with sharpening of the anterior margins suggesting an old injury, otherwise bones and joints as far as can be seen appear to be normal." *Ibid.* In a January 1955 letter to the RO, the appellant referred to the physician from the U.S.S. *Roxane* who had allegedly treated him for the back injury. The appellant stated, "I also wrote to Dr. J____ [spelling unclear], who is a civilian now. He remembered my accident but said without records he couldn't do anything." R. at 81–84. (The Court notes that a Lieutenant W.S. Jordan made entries in the appel-

lant's medical records during his service aboard the U.S.S. *Roxane*. R. at 39–41.) The record does not indicate that any written response from the ship's physician was submitted to the RO, or that any further attempt was made to contact him.

In 1982, the appellant submitted a second, more detailed letter from his shipmate, Mr. Petel, who stated,

> In 1945, [the appellant] and I were in the Navy aboard [a] cargo ship, Roxane AKA 37, as Seamen. We helped load and unload the ship when in Port.

> On the occasion in question, we were loading heavy five inch shells. As the shells were being lowered from the boom to the deck, they started swinging back and forth. They swung toward [the appellant] and knocked him at least ten feet against the bulkhead. [He] yelled "grab hold of it," but it was too late.

> Because of severe back pains that occurred from the accident, [he] had to see the doctor and was unable to do any work for sometime after.

R. at 86.

A May 1983 letter from Dr. George Resmevic stated that x-rays of the appellant's spine showed "some early osteo arthritic changes." R. at 91. His impression was osteoarthritis of the lower dorsal and lumbar spine. *Ibid.* Dr. Eugene Permanente submitted a May 1983 letter, which noted the history of a back injury in 1945, and stated, "The [appellant] is 56 years old and it is possible that the original injury in 1945 predisposed [him] to earl[ier] osteoarthritis than would be expected ordinarily." R. at 97. At an RO hearing in June 1984, the appellant testified that at the time of his injury he was serving on an "attack-cargo amphibious" ship. He stated,

> It carried troops, cargo and we used to deliver supplies to troops on the island. I was in the South Pacific most of the time, and this one time we were loading ammunition from the dock side [on to] ... the ship. This one load happened to be swinging back and forth, quite [a] bit ... I go to stop it and ... it knocked me about 8–10 feet against the steel bulkhead.

R. at 118. He testified that he was treated in sick bay, and that he would have been sent to the base for x-rays, but the ship put out to sea the next day. *Ibid.* He also testified that he has suffered from chronic back pain since the injury. R. at 124. A March 1985 Board decision denied reopening of the claim because the evidence submitted since the 1947 rating decision did not provide a "new factual basis" warranting service connection for a back disability. R. at 136–42. The Board considered Dr. Permanente's opinion that "it is possible" that the osteoarthritis is related to the alleged 1945 injury, but rejected this evidence due to its "conjectural" nature, the lapse of time between service discharge and the examination upon which the opinion was based, and the lack of confirmatory clinical evidence from service. R. at 141.

In support of his current attempt to reopen the claim, the appellant submitted additional evidence, including the following February 1992 statement by Dr. Manoel A. Falcao:

> Apparently the [appellant's] complaints date back to an injury sustained in August, 1945, while he was serving on board a ship, the Roxane AKA37. He further states that since his original injury he has experienced low back pain off and on and has never been completely symptom free.

> Recently the [appellant] was treated in my office for recurrence of his symptoms. X-rays of the lumbosacral spine and MRI of the same region revealed multiple levels of degenerative disc disease worse at the L5S1 level with narrowing of the neuroforamina. X-rays of the lumbosacral spine implicated that his condition has existed for many years although the length of duration is difficult to determine. His injury sustained in August 1945, when he was apparently struck by a pallet containing fifty 40 lb. shells causing him to be thrown against a wall and to fall, could be a contributing factor to his present symptomatology.

R. at 159. The June 1993 Board decision concluded that this evidence was not material because "Dr. Falcao [cited] a history presumably given by the veteran" and "offered no

independent medical evidence that an injury occurred in 1945." R. at 9. The appellant filed a timely appeal with this Court.

## II.

The Secretary contends that Dr. Falcao's opinion is "speculative" because he states that the alleged 1945 back injury *could* be a contributing factor to the appellant's current symptomatology. Secretary's Response to Court Order at 7. Therefore, the Secretary asserts that the claim is not well grounded, under *Tirpak v. Derwinski*, 2 Vet. App. 609 (1992). *See* 38 U.S.C. § 5107(a). Given that the issue on appeal is whether there is new and material evidence to reopen the claim, this argument is inapposite. *See Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992) (holding that new and material evidence is, by its nature, well grounded); *see also Edenfield v. Brown*, 8 Vet.App. 384, 390 (1995) (en banc) (stating that difference, if any, between evidence required to satisfy well-grounded claim requirement and new and material evidence appears to be of slight degree). Nevertheless, assuming the issue were properly presented for the Court's review, the Secretary's argument would fail. In *Tirpak*, the Court held that a claim for service connection for the veteran's cause of death was not well grounded, where a physician stated that the veteran's death "may or may not" have been averted if medical personnel had been able to intubate him, a procedure complicated by his service-connected injuries. 2 Vet.App. at 610–11. The Court notes that, unlike the situation in *Tirpak*, the use of the word "could" by Dr. Falcao does not render his medical opinion without any probative value. To satisfy the initial burden of 38 U.S.C. § 5107(a), a claimant need only submit a "plausible" claim, which "need not be conclusive but only possible." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). As the Court stated in *Lathan v. Brown*, 7 Vet.App. 359, 366 (1995), "*Tirpak* does not stand for the proposition that a medical opinion must be expressed in terms of certainty in order to serve as the basis for a well-grounded claim."

Where a claimant seeks to reopen a claim on the basis of new and material evidence, the Board must perform a two-step analysis. First, the Board must decide whether the evidence presented or secured since the last final disallowance is new and material. Second, if the evidence is new and material, the Board must reopen the claim and review the former disposition of the claim. *See* 38 U.S.C. § 5108; *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). The Court reviews whether evidence is new and material on a de novo basis. *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Thus, we must examine whether new and material evidence has been presented or secured since the 1985 Board decision, which denied reopening of the claim. *See Evans v. Brown*, 9 Vet.App. 273, 285 (1996).

In the decision on appeal, the Board concluded that Dr. Falcao's 1992 medical opinion was not material because it was based on a history of a back injury during service provided by the appellant. The Court has held that a medical opinion was not material where it was based on a veteran's recitation of events that had already been rejected in a previous decision on the merits. *See Reonal v. Brown*, 5 Vet.App. 458, 460–61 (1993). However, in this case, there was no rating or decision that expressly rejected the history of a back injury or trauma during service as not credible. Rather, the 1985 Board decision denied the claim on the grounds that there were no service medical records or clinical records showing that a back injury or disability was incurred in service. Although the appellant's service medical records do not show treatment for a back injury, the record contains the appellant's testimony and the statements of his shipmates regarding the occurrence of the alleged in-service back injury. As noted, the basis for the Board's 1985 disallowance of the claim was a lack of medical evidence linking osteoarthritis to service. *See Evans*, 9 Vet.App. at 285 (to reopen, newly presented evidence must be probative of issue that was basis for last final disallowance). The Court concludes that where evidence supports service incurrence of an injury, the Board may not, on the one hand, deny the claim for lack of medical evidence and later, when medical evidence is submitted, refuse to reopen the claim due to the lack of evidence of service incurrence. *See* 38 U.S.C. § 5108; *Manio*, 1 Vet.App. at

145. The Court holds that Dr. Falcao's 1992 opinion is not merely cumulative of other evidence in the record (rather, it is corroborative, *see Paller v. Principi*, 3 Vet.App. 535, 538 (1992)), and that it is relevant to and probative of the issue at hand (i.e., the etiology of the appellant's back disability). *See Evans*, 9 Vet.App. at 283. Additionally, when viewed in the context of all the evidence, both new and old, the opinion presents a reasonable possibility of changing the outcome of the case. *See Glynn v. Brown*, 6 Vet.App. 523, 528–29 (1994); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991) (holding that, even where evidence is relevant and probative, reopening will not be justified unless there is a reasonable possibility of a different outcome). Thus, the Court concludes that the appellant has submitted new and material evidence, and this matter will be remanded for further development and readjudication.

 This claim dates from 1946. Since error in the Board's decision requires remand for a reopening and review of the former disposition, the Court offers the following observations in an effort to assist the Secretary to avoid further error and protraction of the claim. On remand, the Board must determine the credibility of the statements made by the appellant and others concerning the alleged back injury during service. In making these determinations, the Board must discuss the clinical evidence in the record (including the 1947 and 1952 x-ray findings) that appears to corroborate the history of a back injury. The Court notes that there is no evidence that the Secretary has provided the appellant with an examination since 1947, or that any VA examiner has ever stated an opinion on the etiology of the appellant's current back disability. Thus, in developing the claim on remand, the duty to assist may require the Secretary to provide the appellant with a medical examination. *See* 38 U.S.C. § 5107(a); *Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993); *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991). Additionally, the duty to assist requires that the Secretary attempt to obtain a statement from the physician who allegedly remembered treating the appellant for a back injury in service. R. at 81–84; *see*

*Masors*, 2 Vet.App. at 186–87. The appellant should also be notified that, if he has any written response from this physician in his possession, he may wish to submit it in support of his claim. The Board's decision must include an adequate statement of reasons or bases, and any medical conclusions regarding the etiology of the back disability must be supported by independent medical evidence. *See Rollings v. Brown*, 8 Vet.App. 8, 12 (1995); *Colvin*, 1 Vet.App. at 175.

Accordingly, the Board's decision is VACATED and this matter is REMANDED for readjudication. On remand the appellant is free to submit additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992).

HOLDAWAY, Judge, dissenting:

I do not believe that Dr. Falcao's 1992 opinion was either new or material. It was merely cumulative of a previous opinion rendered by Dr. Permanente in 1983 and considered by the Board in a 1985 adjudication denying reopening. Both opinions were based on a history furnished by the appellant. Dr. Permanente said that the 1945 injury "possibly" predisposed him to an earlier onset of osteoarthritis than would be expected ordinarily. Presumably, in using the word possibly, he equally meant "possibly not." Dr. Falcao merely stated that the injury "could" be a contributing factor. If anything, it seems to me, the only addition Dr. Falcao makes to this case is to highlight and reinforce the ambivalence of Dr. Permanente's opinion. *Compare with Paller v. Principi*, 3 Vet.App. 535 (1992); *see also Tirpak v. Derwinski*, 2 Vet.App. 609 (1992). For much the same reason Dr. Falcao's opinion is not new, it is also not material. By underlining the equivocal nature of the weak opinion furnished by Dr. Permanente, Dr. Falcao's opinion actually decreases any reasonable possibility of changing the result of the previous adjudication. I, therefore, respectfully dissent.