**Wilda E. BOSTAIN, Appellant,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.**

No. 97–62.

United States Court of Veterans Appeals.

March 25, 1998.

Barbara J. Cook, Cincinnati, OH, was on the brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Peter M. Donawick, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, Wilda E. Bostain, widow of veteran Carl Bostain, appeals a September 26, 1996, decision of the Board of Veterans' Appeals (Board or BVA) which determined that she had not submitted new and material evidence to reopen her claim for dependency and indemnity compensation (DIC). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The veteran served on active duty in the U.S. Army Air Forces from July 1943 to November 1945. In March 1944, while on duty in the skeet tower, he was struck in the left eye by a pellet from a twelve-gauge shotgun. The veteran was hospitalized for two months and treated with penicillin in an attempt to save his eye. The pellet was lodged in the veteran's eye socket and could not be removed. As a result of his injury, the veteran suffered severe continuous pain in his left eye and the vision in his left eye was reduced to light perception. In July 1944, after a month of sick leave, the veteran was treated for complaints of continuous headaches over the left eye. In August 1944, a medical examiner noted that the veteran was having difficulty adjusting to his disability and was confronted with a difficult home situation. The examiner stated that as a result, the veteran was suffering from "nervousness, anxiety, profuse sweating, dizziness, anorexia[,] and insomnia." The diag-

nostic impression was transient psychoneurotic anxiety state, situational reaction. The veteran's service medical records indicate that he continued to suffer from headaches. He was discharged in November 1945.

In February 1946, the veteran was awarded service connection with a 30% disability rating and a special monthly pension for his left eye condition. In March 1949, the veteran's left eye was completely removed. After the veteran's eye surgery, he suffered chronic conjunctivitis. In March 1950, the veteran continued to complain of headaches and discharge from his left eye. In 1954, the veteran was examined by Clarence E. Boyd, M.D., for several amnesiac episodes. The doctor diagnosed the veteran with dissociative reaction and recommended psychiatric hospitalization.

In October 1962, the veteran was hospitalized with complaints of headaches. At the time of admission, his blood pressure measured 200/90, and he was diagnosed with hypertensive vascular disease, unsustained type.

In March 1978, the veteran was diagnosed with essential type hypertension. In October 1978, it was determined that the veteran had peripheral vascular disease and probable coronary disease. In May 1983, the veteran was diagnosed with bilateral femoral aneurysms, bilateral iliac aneurysms, abdominal aortic aneurysms, and arterial insufficiency of both legs. In June 1983, the veteran died. His death certificate listed the cause of death as dissecting aortic aneurysms due to renal failure due to circulatory failure of the legs. Cardiorespiratory failure was listed as a significant contributing factor. The hospital report stated that he died of generalized cardiovascular insufficiency, toxicity, renal failure, and gangrene of the legs.

In August 1983, the appellant filed an application for DIC. In February 1984, the VA regional office (VARO) denied the appellant's claim because the evidence did not demonstrate that the veteran's cause of death was related to his service-connected disabilities. The appellant appealed the VARO's decision to the BVA. As part of her appeal, in May 1984, she submitted a statement from J.W. Peterson, M.D., a VA doctor who opined that "[t]he injury to [the veteran's] eye and the later trauma of surgery may have contributed to his poor health in later years." The appellant submitted statements that she believed that the veteran's service-connected eye disability, with resulting nervousness and headaches, contributed to his circulatory condition that in turn caused his death. In June 1985, the BVA determined that the appellant was not entitled to DIC because the veteran's cause of death was not service connected.

In August 1985, the appellant applied to reopen her claim for DIC. Subsequently, she submitted a February 1986 medical opinion from Clarence E. Boyd, M.D. Dr. Boyd opined the following:

This examiner is of the opinion that the patient's trauma did indeed result in emotional illness. As early as August 7th, 1944, it is noted in the patient's medical records that he experienced considerable difficulty in adjusting to his disability and that this was also compounded by a difficult home situation. He was experiencing symptoms of nervousness, anxiety, profuse sweating, dizziness, anorexia, and insomnia. The consulting pryschiatrist [sic] believed this to be a transient, psychoneurotic anxiety state, the situational reaction. He recommended a convalescent furlough. It is evident that this condition proved to be permanent, and that the patient was continuing to have these troubles nearly ten years later when this examiner saw him, and that it constituted one of the factors in the development of his hypertension. Hypertension further leads to further and more malignant vascular changes, and it is therefore not inconceivable that the vascular changes resulting in the patient's death were the result of a chain of events that began with the original trauma.

The VARO denied the appellant's request to reopen her claim. In October 1987, the BVA found that the appellant had not submitted new and material evidence to reopen her claim.

In April 1993, the appellant filed an application to reopen her claim. In October 1993, she submitted a letter from Timothy L. Con-

nelly, M.D., a peripheral vascular surgeon. Dr. Connelly provided the following opinion:

It is well documented that the patient has had severe chronic stress and hypertension. It is well known that hypertension can be an etiological factor in developing aneurysms and in causing aneurysms to enlarge. It certainly also can contribute to [the] presence of and acceleration of atherosclerotic disease.

I would hope that you would consider the above factors and consider that his pre[ ]existing service related condition may have in this manner contributed to his ultimate demise.

In May 1994, the VARO denied the appellant's application to reopen her claim because Dr. Connelly's opinion was not new and material evidence. The appellant appealed the VARO's decision to the BVA, claiming that the veteran's hypertension and his death were caused by the pain and stress created by his eye disability.

The BVA found that the appellant had not submitted new and material evidence to reopen her claim. The BVA reviewed the evidence submitted since the 1985 BVA decision. The BVA found that the appellant's lay testimony was not material evidence because it cannot establish medical causation. The BVA also found that Dr. Connelly's statement was not material evidence because it was too speculative to establish "causality." The BVA stated that his opinion was "replete with generalities," did not discuss the evidence of record, and made "no actual[ ] causal tie between any service-connected disability and the veteran's death."

## II. ANALYSIS

■ New and material evidence must be presented or secured to reopen a claim which was disallowed by a final adjudication. *See* 38 U.S.C. §§ 5108, 7104(b). In determining whether to reopen a previously disallowed claim, the BVA must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet. App. 140, 145 (1991). First, it must be determined whether the evidence presented or secured since the last final disallowance of the claim is new and material when the credibility of the new evidence is presumed. *See*

*Evans v. Brown*, 9 Vet.App. 273, 283 (1996); *Justus v. Principi*, 3 Vet.App. 510, 513 (1992). Second, if the evidence is new and material, then the adjudicator must reopen the claim and readjudicate the claim on the merits. *See Evans, supra.* Whether evidence is new and material involves three questions. *See id.* First, is the evidence submitted since the last final disallowance of the claim new? *See id.* " 'New' evidence is that which is not merely cumulative of other evidence of record." *Cox v. Brown*, 5 Vet. App. 95, 98 (1993). Second, is it probative of each issue which was a specified basis for the last final disallowance? *See Evans, supra.* Third, is there a reasonable possibility that the new evidence, when considered in light of all the evidence of record, would change the outcome of the case on the merits? *See id.* Whether evidence is "new and material" is a question of law which this Court reviews de novo. *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991).

■ The last final disallowance of the appellant's claim for service connection of the veteran's cause of death was the 1987 BVA decision. Since that time the appellant has submitted her own personal testimony and a medical opinion from Dr. Connelly. The appellant's testimony that the veteran's cause of death was etiologically related to his hypertension that was caused by stress and anxiety from his eye condition is cumulative of her previous contentions which were considered by the Board in 1987. Therefore, her testimony is not new. Even assuming her testimony were new, as lay testimony, it is not competent to establish, and therefore not probative of, a medical nexus between the veteran's service-connected eye condition and his cause of death. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992).

■ Dr. Connelly's medical opinion is new evidence, but it is not material evidence. In *Obert v. Brown*, the Court held that a medical opinion expressed in terms of "may," also implies "may or may not" and is too speculative to establish a plausible claim. 5 Vet. App. 30, 33 (1993); *see also Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992) (holding that a doctor's opinion that the veteran's

service connected disability "may or may not" have contributed to his cause of death was insufficient to well ground the claim). " 'New and material' evidence is, by its nature, well[ ]grounded, i.e., evidence that, if believed, would provide a 'reasonable possibility' that the outcome would be changed." *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992). Therefore, Dr. Connelly's opinion that the appellant's "pre[ ]existing service related condition may have ... contributed to his ultimate demise" is too speculative, standing alone, to be deemed new and material evidence.

The Court has held that a medical opinion submitted after a final disallowance of a claim, which is corroborative of a favorable medical opinion previously considered by the Board as part of a final disallowance, can serve as new and material evidence. *See Molloy v. Brown*, 9 Vet.App. 513, 515–17 (1996); *Paller v. Principi*, 3 Vet.App. 535, 538 (1992). "Corroborate" means "[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." BLACK'S LAW DICTIONARY 344 (6th ed.1990). In *Molloy, supra*, "Dr. Eugene Permanents submitted a May 1983 letter, which noted the history of a back injury in 1945, and stated, 'The [appellant] is 56 years old and it is possible that the original injury in 1945 predisposed [him] to ear[lier] osteoarthritis than would be expected ordinarily.' " *Id.* at 515. The BVA reviewed Dr. Permanents's opinion and denied the veteran's claim. *Id.* Subsequently, the veteran submitted an opinion letter from Dr. Manoel A. Falcao which stated, " 'His injury sustained in August 1945, when he was apparently struck by a pallet containing fifty 40 lb. shells causing him to be thrown against a wall and to fall, could be a contributing factor to his present symptomatology.' " *Id.* The BVA again denied the veteran's application to reopen. This Court held that Dr. Falcao's 1992 opinion was not merely cumulative evidence, but instead corroborated evidence previously of record and was therefore new and material evidence. *Id.* In *Paller, supra*, a medical professional submitted an opinion that the veteran's " 'longstanding anxious [sic] disorder producing symptoms over a period of forty years was certainly a stressor that affected cardiovascular status' and his 'chronic emotional stress and anxiety ... directly contributed to his death.' " (Ellipsis added.) The BVA found that the doctor's opinion was not material because it was a rearticulation of a medical opinion considered by the Board in a previous final disallowance. *Id.* at 537. This Court, on the other hand, held that the newly submitted medical opinion was material evidence because of its "corroborative nature." *Id.* at 538. In *Molloy* and *Paller*, both *supra*, the latter medical opinions added some weight to and tended to confirm the validity of the former medical opinions considered by the Board as part of a final disallowance.

In the present case, Dr. Connelly's opinion is even more speculative than Dr. Boyd's previously rejected opinion. For example, Dr. Connelly, unlike Dr. Boyd, did not even mention the veteran's service-connected eye injury. Instead, Dr. Connelly's opinion merely surmises that an *unspecified* service-related injury *may* have contributed to the appellant's death. Dr. Connelly's purely speculative opinion tends to weaken, rather than strengthen, the previous testimony and is, a fortiori, not corroborative. Therefore, Dr. Connelly's medical opinion is not new and material evidence because there is no reasonable possibility that the opinion could change the outcome of the appellant's claim on the merits. *See Warren v. Brown*, 6 Vet.App. 4, 6 (1993) (holding that a medical opinion expressed in terms of "could have been" would not create a reasonable possibility that the outcome would be changed).

## III. CONCLUSION

After consideration of the briefs and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error that would warrant reversal or remand. The Court is also satisfied that he BVA decision fulfills the "reasons and bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). Accordingly, the September 26, 1996, decision of the Board is AFFIRMED.