**Terry L. SHOCKLEY, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 96–829.**

United States Court of Veterans Appeals.

May 8, 1998.

Francis M. Jackson, Portland, ME, was on brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Patricia Trujillo, Washington, DC, were on brief for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

IVERS, Judge:

The veteran appeals from a March 15, 1996, Board of Veterans' Appeals (BVA or Board) decision which determined that a viable claim for clear and unmistakable error (CUE) had not been presented. The veteran has raised three arguments: (1) a remand is required to readjudicate whether new and material evidence had been submitted to reopen the claim for post-traumatic stress disorder (PTSD) in light of *Cohen v. Brown,* 10 Vet.App. 128 (1997); (2) reversal is required because the BVA failed to adjudicate an implied claim for non-service-connected pension and the related claim that he is entitled to an earlier effective date for pension based on CUE; and, (3) the BVA decision contained inadequate reasons and bases regarding an earlier effective date for PTSD. For the reasons stated below, the Court will affirm the BVA's March 15, 1996, decision.

## I. FACTS

The veteran served on active duty from June 1967 to January 1973 and had service in Vietnam. Record (R.) at 129. The veteran's enlistment examination noted that he had moderate flat feet. R. at 13–17. His service medical records (SMRs) document treatment for minor lacerations (R. at 19); intermittent hemoptysis after drinking (R. at 20, 22); and joint trauma (R. at 21, 23, 25, 27). Hemoptysis is the expectoration of blood or of blood-stained sputum. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 750 (28th ed.1994) [hereinafter DORLAND'S].

The veteran was hospitalized in Okinawa from April 27 to May 1, 1973, for acute chronic alcoholism. The mental status examination noted that he was in moderate distress from anxiety, he was "oriented times three" and appropriate, and he had no suicidal or homicidal ideations. He was considered "non-psychotic." R. at 42–62. During his stay he was treated with Librium. R. at 60. Librium is indicated for the management of anxiety disorders. PHYSICIANS' DESK REFERENCE 2178 (50th ed.1996) [hereinafter PDR]. It was recommended that the veteran be air evacuated to CONUS [continental United States] for further treatment for his alcohol problem. R. at 43.

The veteran underwent inpatient treatment at Walter Reed Army Medical Center (WRAMC) from May 13 to June 25, 1973. R. at 66–69, 72–106. Treatment included Antabuse, Librium, and Thorazine. R. at 74. Antabuse is an aid in the management of selected chronic alcoholic patients who want to remain in a state of enforced sobriety so that supportive and psychotherapeutic treat-

ment may be applied to best advantage. PDR at 2695. Thorazine is used for the management of manifestations of psychotic disorders. *Id.* at 2523. Upon discharge he was diagnosed:

Alcohol addiction, severe, chronic, stress, moderate, routine military duty in a non-combat oversea's [sic] area and separation from his wife, impairment for further military duty, marked, impairment for social and industrial adaptability considerable. L[ine of duty]: No, Due to own misconduct.

R. at 68; *see also* R. at 117. It was recommended that the veteran receive further inpatient rehabilitation at a VA hospital after his transfer from Walter Reed. R. at 69.

The veteran's separation examination noted alcohol addiction. R. at 107–08. In July 1973 the veteran was transferred to the Bedford, Massachusetts, VA medical center (MC) for further rehabilitation. R. at 118–21, 139. That same month, the veteran submitted an application for compensation or pension. He listed the nature of his sickness, disease, or injury as "SEE MEDICAL RECORDS." R. at 132. In an August 10, 1973, rating decision, the VA regional office (RO) granted service connection for a scar of the left eyebrow, residual lesion removal, and denied service connection for alcohol addiction, which was considered due to the "veteran's own willful misconduct." R. at 135, 137.

In February 1981 the veteran's service representative notified VA that they may not have had all of the veteran's medical records from WRAMC. R. at 147. In March 1981 VA requested that a search be conducted at the National Personnel Records Center (NPRC) for any additional medical records for the veteran. R. at 150.

On April 4, 1984, the veteran filed a claim for service connection for delayed stress and nerves. R. at 152. He was asked to provide medical evidence of treatment for a nervous condition and was informed that service connection for alcoholism had previously been denied. R. at 155, 157. VA requested records for treatment during 1973; however, no additional hospital records were available. R. at 160. Service personnel records were submitted. R. at 165–69.

In September 1984 the veteran underwent a VA examination at the Togus, Maine, VAMC for post-traumatic stress disorder (PTSD). The examiner stated that the veteran's records from Walter Reed and the Bedford VAMC were not in the VA claims file (c-file). It was noted that, while stationed on Okinawa and in Vietnam, the veteran had worked on diesel trucks and generators. The examiner noted that the veteran had been under mortar fire and other small arms attacks while in Vietnam, but "has no specific significant incident that he recalls frequently although he says he continues to have some nightmares and wakes up with cold sweats." R. at 173. The assessment was:

Patient appears to be suffering from a depressive neurosis. He has some residual symptoms which can be related to his period in Vietnam such as occasional nightmares and general feeling of fear when he wakes up at night but not specifically related to incidents there. He also has a problem with addiction to alcohol. The question is as to whether he had another diagnosable psychiatric illness such as severe depression while he was hospitalized for what appears to be a fairly long period of time both in Okinawa, Walter Reed, and Bedford VA. It is considered essential that some records be obtained from these last two organizations as to the reason for his length of hospitalization at that time. It has been recommended to the patient that he seek hospitalization at the Alcohol Dependency Treatment Unit for rehabilitation program.

R. at 175. On October 10, 1984, the RO denied service connection for a nervous condition. The RO stated that additional record requests had failed to show any treatment for a condition "that could be called [PTSD] or a chronic nervous problem while in military service." R. at 177–78, 180.

In September 1987 the veteran submitted informal claims for a nervous condition (R. at 184) and PTSD, with "stressor info[rmation] to follow" (R. at 183). In October 1987 the veteran was informed that he needed to submit new and material evidence to reopen his

claim for a nervous condition and advised him of the types of evidence necessary to substantiate his claim. R. at 187, 189.

In a February 1988 rating decision, service connection was denied for PTSD as not shown by the record. The denial of service connection for depressive neurosis was continued. R. at 191–92. The veteran submitted a Notice of Disagreement (NOD) for the issues of depressive neurosis and PTSD. R. at 194. A Statement of the Case (SOC) was issued which noted that jurisdiction was not taken on the depressive neurosis issue because the veteran had not submitted new and material evidence. R. at 200; see also R. at 203.

On March 7, 1989, the veteran testified at an RO hearing. The hearing officer stated that the issue was service connection for a nervous condition to include PTSD, and the veteran's service representative agreed. R. at 206. The veteran's representative indicated that a VA doctor, a social worker, and a physician's assistant had all diagnosed the veteran with PTSD during hospitalization from December 1988 to January 1989. R. at 206, 210. The veteran testified that his stressors included being caught in sniper fire during supply runs, rocket attacks when he was a generator man, and a dire family situation upon his return from service. R. at 212–13, 215.

VA made another request for records. R. at 222, 228. In response, Bedford VAMC hospitalization records from June 6 to July 17, 1973, were received, showing a diagnosis of alcoholism, chronic excessive drinking, by history. R. at 224. VA treatment records from March 1988 to April 1989 show treatment for PTSD and alcohol abuse. R. at 233–43, 246–62, 267–69, 275–77. The veteran was hospitalized at the Togus, Maine, VAMC in April 1988, from December 1988 to January 1989, and from March 7 to April 4, 1989. The discharge summaries contained diagnoses of PTSD, chronic, severe, continuous alcohol dependency, and polysubstance abuse. R. at 230, 244, 263–66, 270–74, 278–81.

In May 1989 VA requested records from the Army Hospital Zukeran for 1972 and from WRAMC. R. at 286, 289. The Army Hospital Zukeran noted that there was no information on the veteran at that clinic. R. at 286. WRAMC indicated that they no longer had his records and that his records would have been sent to the NPRC. R. at 287–88.

In July 1989 the hearing officer rendered his decision and denied service connection for a nervous condition to include PTSD. R. at 292–93. A Supplemental SOC (SSOC) was issued. R. at 295–300. On May 17, 1990, the BVA denied service connection for an acquired psychiatric disorder to include PTSD. R. at 303–08. In October 1990 the veteran requested BVA reconsideration because no attempt to verify stressors had been made and medical records were missing. R. at 313–14.

In January 1991 VA requested additional medical records. R. at 316. In response, the NPRC indicated that there were no additional medical records on file for the veteran. A search for the "1973 Outpatient Retired and 1973 Mental Hygiene" records was negative. R. at 318. On July 8, 1991, the BVA issued a supplemental decision denying service connection for an acquired psychiatric disorder to include PTSD. R. at 320–21.

A March 1993 statement from the veteran's service representative indicated that the veteran "requests to reopen his claim for PTSD. [CUE] was made in rating decision of 8–10–73...." R. at 323. It was also noted that the medication given during the veteran's treatment in 1973 consisted of Thorazine and Librium and that this was inconsistent with the diagnosis of alcoholism and that no psychiatric records were requested at that time. Id. It was requested that all psychiatric records for the last year be obtained. R. at 324.

On June 21, 1993, the RO determined that there was no CUE in the August 1973 rating decision. R. at 327–29. The veteran's NOD stated, "Mr. Shockley disagrees with rating decision of 6/21/93. Please schedule him for a personal hearing here in Togus." R. at 333. An SOC was issued which listed the issue as "[CUE] in rating action of 8–1[0]–73 for not considering a nervous condition along with alcohol addiction." R. at 338.

On December 13, 1993, a VARO hearing was held. The veteran's representative confirmed that the issue was CUE in the August 10, 1973, rating decision denying service connection for a nervous disorder. His representative argued that the veteran had been misdiagnosed. R. at 343. The veteran testified about his stressors, which included learning that a child he knew had been mutilated, discovering that two soldiers from his outfit had died in their sleep for no apparent reason, and being attacked throughout the night and next morning. R. at 346–47. He stated that when he returned home his family situation was bad. R. at 349. The veteran stated that he experienced flashbacks. R. at 352. Dr. Peterson stated that he had been treating the veteran since the fall of 1991 and explained that his treatment of the veteran was for flashbacks, easy startle response, trouble sleeping, and irritability. R. at 353. Dr. Peterson opined,

> [M]y impression from my contact with him, and reviewing the record is that it sounds like he probably has had [PTSD] symptoms that date back to his time in military service, and that's probably why he was being treated with neuroleptics back then, which was generally what people used for [PTSD] symptoms at that time, thinking that most of the flashbacks were a hallucinatory sort of thing. Probably in conjunction with it at that time was alcohol abuse.

R. at 354. Neuroleptic is a term used to refer to the effects on cognition and behavior of antipsychotic drugs, which produce a state of apathy, lack of initiative, and limited range of emotion and in psychotic patients causes a reduction in confusion, agitation, and normalization of psychomotor activity. DORLAND'S at 1130. Dr. Peterson believed that the symptoms the veteran suffers from today dated back to service. *Id.* The veteran's wife and a friend testified regarding the veteran's reactions. R. at 355–59.

On December 20, 1993, the hearing officer determined,

> There is no [CUE] demonstrated in the rating of 08–10–73, denying service connection for alcohol addiction held to be the result of the veteran's own willful misconduct and not granting service connection

for an acquired psychiatric disorder, currently claimed as [PTSD].

R. at 368. An SSOC was issued. R. at 371–74. The veteran's substantive appeal stated, "Veteran stated his claim at his hearing on Dec. 13." R. at 376. In February 1994 the veteran's representative indicated that the question at issue was CUE in the August 10, 1973, rating decision in not granting service connection for a nervous condition. R. at 380. A November 2, 1995, informal hearing presentation framed the issue as whether new and material evidence had been submitted to reopen the claim for service connection for PTSD. R. at 388–89. On March 15, 1996, the BVA determined that the August 1973 rating decision was final and that the veteran had not presented a viable claim for CUE. R. at 3.

## II. ANALYSIS

### A.

■ The issue decided by the BVA in its May 15, 1996, decision was whether the veteran had presented a viable claim of CUE in the August 10, 1973, RO decision. R. at 3. In order to establish CUE, a veteran must demonstrate that either the correct facts, as they were known at the time, were not before the adjudicator, or the statutory and regulatory provisions extant at the time were incorrectly applied. *Russell v. Principi*, 3 Vet.App. 310, 313–14 (1992) (en banc). VA's breach of a duty to assist cannot form the basis for a claim of CUE. *Hazan v. Gober*, 10 Vet.App. 511 (1997); *Crippen v. Brown*, 9 Vet.App. 412 (1996); *Caffrey v. Brown*, 6 Vet.App. 377 (1994).

■ The veteran claims that the BVA decision contained inadequate reasons and basis and argues that VA failed in its statutory duty to assist. Initially the Court notes that the BVA provided adequate reasons and bases for its decision. *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). A breach of the duty to assist creates an incomplete record, not an incorrect record. *Caffrey*, 6 Vet.App. at 384. The veteran alleges that there were missing medical records, but offers nothing to corroborate that allegation. Several requests to the NPRC and other facilities were made

and the most recent response indicated that there were no new medical records. R. at 318; *see also* 150, 160, 222, 228, 286, 289, 316. The veteran also argues that the medical evidence was misinterpreted. A disagreement with how the facts were weighed and interpreted does not amount to a claim for CUE. *Russell, supra.*

The RO did not consider or deny a claim for a nervous disorder in the August 1973 rating decision. R. at 135. A review of the record does not show that the veteran raised a claim for a nervous condition or a claim that could be construed as a claim for a nervous condition to include PTSD at that time. The veteran's application indicated "SEE MEDICAL RECORDS." R. at 132. VA must read a veteran's claim and documents in a liberal manner to identify and adjudicate all reasonably raised claims. *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). However, there was no final RO decision in 1973 denying a claim for a nervous condition. Moreover, at the time of the 1973 RO decision, the veteran did not have a well-grounded claim for a mental condition. There was no diagnosis and no medical evidence relating such a diagnosis to service. *See Caluza v. Brown,* 7 Vet.App. 498 (1995). Therefore, the veteran has not submitted a valid claim for CUE in the August 1973 rating decision. *Fugo v. Brown,* 6 Vet.App. 40 (1993).

### B.

When a claim has been the subject of a prior final decision, it may be reopened only upon the presentation of "new and material" evidence. *See* 38 U.S.C. §§ 5108, 7104(b); *Evans v. Brown,* 9 Vet.App. 273 (1996). On claims to reopen, the BVA must conduct a two-step analysis under section 5108. *See Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must be determined whether the evidence presented or secured since the last final disallowance of the claim is "new and material." *See Blackburn v. Brown,* 8 Vet.App. 97, 102 (1995); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). Second, if the evidence is "new and material," the Board must then reopen the claim on the merits. *See Jones v. Derwinski,* 1 Vet.App. 210, 215 (1991). Whether evidence is "new and material" is a question of law which this

Court reviews de novo. *Molloy v. Brown,* 9 Vet.App. 513, 516 (1996); *Colvin, supra.* "New" evidence is evidence which is not cumulative or of record at the time of the last final disallowance of the claim. "Material" evidence is probative of the issue at hand, and of sufficient weight and significance that there is a reasonable possibility that the new evidence, when considered in light of all the evidence, would change the outcome of the claim on the merits. *Evans,* 9 Vet.App. at 283. For purposes of reopening, the newly presented evidence is presumed credible. *See Justus v. Principi,* 3 Vet.App. 510 (1992).

The appellant first attempted to reopen his claim for service connection for PTSD in March 1993. R. at 323. On June 21, 1993, the RO issued a decision finding only that there was no CUE in the August 1973 rating decision, and the appellant then filed an NOD stating that he "disagreed" with that June 1993 rating decision. Since the claim was reasonably raised by the appellant but never addressed by the RO, the Court concludes that the claim remains pending at the RO. *See Kandik v. Brown,* 9 Vet.App. 434 (1996); *Hanson v. Brown,* 9 Vet.App. 29 (1996). The Board did not err in failing to address the claim to reopen since there was no RO decision addressing that claim and there was no NOD filed for that claim.

The Court notes that this case is distinguishable from *Collaro v. West,* 136 F.3d 1304 (Fed.Cir.1998). In *Collaro,* the Federal Circuit held that, despite the vague NOD filed by the appellant in that case, he subsequently "cut the rough stone of his NOD to reveal the statutory and constitutional radix of his issue that lay within" in his request for BVA reconsideration. *Collaro,* 136 F.3d at 1309. Here, however, we are dealing with two distinct claims: the CUE claim, which the RO addressed, for which the appellant filed an NOD, and as to which the Board issued a decision; and the claim to reopen, which the appellant has raised before the RO. The RO has never adjudicated that claim and, thus, it remains pending. Since there is no jurisdiction-conferring NOD on the claim to reopen, the Court simply notes that the claim was never adjudicated by the RO and thus remains pending. *See Kandik, supra.*

### C.

The veteran argues that "although the veteran was recently awarded a non-service-connected pension benefit, he was entitled to consideration of that claim much earlier." Appellant's Brief (Br.) at 9; Reply Br. at 11. The record does not contain any reference to a pension. Nor is there evidence of an RO decision on a pension issue or an earlier effective date issue. Furthermore, there is no NOD regarding a pension or an earlier effective date and the BVA decision does not discuss these issues. This Court has jurisdiction to consider an appeal provided an NOD has been filed with regard to that particular issue. *See Ledford v. West,* 136 F.3d 776 (Fed.Cir.1998); *Barrera v. Gober,* 122 F.3d 1030 (Fed.Cir.1997); *Grantham v. Brown,* 114 F.3d 1156 (Fed.Cir.1997). In addition, 38 U.S.C. § 7252(a) provides that the Court has the "power to affirm, modify, or reverse a decision of the Board or to remand the matter as appropriate." The Court's review "shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b). Because there is no RO decision, NOD, presentation of the issues to the BVA, or BVA decision on these issues, the Court does not have jurisdiction to review them. *See Ledford, Barrera,* and *Grantham,* all *supra; see also* 38 U.S.C. §§ 7252(a), (b).

The veteran also raised a claim for an earlier effective date for PTSD. However, the veteran has never been granted service connection for PTSD. Until service connection is granted for PTSD, the effective date is not an issue. Furthermore, there is no NOD regarding an earlier effective date nor is this issue discussed in the BVA decision. Therefore, the Court does not have jurisdiction to review this claim. *See Ledford, Barrera,* and *Grantham,* all *supra;* 38 U.S.C. §§ 7252(a), (b).

### III. CONCLUSION

For the reasons stated above, the BVA's May 15, 1996, decision is AFFIRMED.