Citation Nr: 1438742 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 05-40 338 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Los Angeles, California


THE ISSUE

Entitlement to compensation benefits, pursuant to the provisions of 38 U.S.C.A. § 1151, for anal fissures with hemorrhoids, as a result of VA medical treatment.
 

REPRESENTATION

Appellant represented by: Military Order of the Purple Heart of the U.S.A.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

April Maddox, Counsel


INTRODUCTION

The Veteran served on active duty from February 1968 to March 1971. 

This appeal to the Board of Veterans' Appeals (Board) arose from a November 2007 rating decision in which the RO, inter alia, denied compensation benefits, pursuant to the provisions of 38 U.S.C.A. § 1151, for anal fissures with hemorrhoids. The Veteran filed a notice of disagreement (NOD) in December 2007. A statement of the case (SOC) was issued in December 2008, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) later that month. 

In January 2009, the Veteran testified during a Board hearing before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record. 
In March 2009, the Board inter alia, remanded the section 1151 claim for compensation to the RO, fits via the Appeals Management Center (AMC), in Washington, DC, for additional action, to include further development of the evidence. As explained in more detail below, after accomplishing the requested action, the RO/AMC continued to deny the claim, and returned the matter to the Board for further appellate consideration. 

The Veteran's prior, paper claims file has been converted to paperless, electronic records contained in the Veteran Benefits Management System (VBMS) and Virtual VA.

As final preliminary matters, in March 2009, the Board noted that in a February 2006 statement, the Veteran indicated that he wished to file an NOD with a December 27, 2005 decision regarding a claim for a clothing allowance. However, the Board could not find a December 2005 decision denying the Veteran's claim for a clothing allowance in the claims file. Accordingly, this matter was referred to the RO for appropriate action, to include, if warranted, issuance of a SOC pursuant to Manlincon v. West, 12 Vet. App. 238 (1999). A July 2009 "Routing and Transmittal Slip" shows that this matter was routed to the VA Greater Los Angeles Healthcare System for issuance of an SOC. However, no SOC was ever issued. As such, this matter is, again, referred to the RO for appropriate action. 

Also in the March 2009remand, the Board noted that the Veteran had raised claims of entitlement to service connection for a right knee disability and entitlement to fee basis treatment but that these claims had not yet adjudicated. As such, these matters were referred to the RO for appropriate action. However, the RO has not yet adjudicated these matters. As such, these matters are, again, referred to the RO for appropriate action. 



FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate the claim herein decided has been accomplished.

2. The only competent, probative medical opinion to address the question of whether the Veteran has anal fissures with hemorrhoids, as a result of VA medical treatment, that was due to carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA physicians, or an event not reasonably foreseeable in connection with VA medical treatment, weighs against the claim.


CONCLUSION OF LAW

The criteria for compensation benefits, pursuant to the provisions of 38 U.S.C.A. § 1151, for anal fissures with hemorrhoids, as a result of VA medical treatment are not met. 38 U.S.C.A. §§ 1151, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.358, 3.361 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2013)) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2013). 

Notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim(s); (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claim(s), in accordance with 38 C.F.R. § 3.159(b)(1). 

The Board notes that, effective May 30, 2008, 38 C.F.R. § 3.159 has been revised, in part. See 73 Fed. Reg. 23,353-23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159(b)(1), which had stated that VA will request that a claimant provide any pertinent evidence in his or her possession.

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (AOJ) (in this case, the RO, to include the AMC). Id. Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id. 

Although section 1151 claims are not service connection claims, disability benefits under that section are awarded as if service connected. Hence, pertinent to this claim, VA's notice requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, medical nexus (here between the disability and VA medical or surgical treatment), degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

In this appeal, in an August 2007 pre-rating letter, the RO provided notice to the Veteran regarding what information and evidence was needed to substantiate his section 1151 claim based on VA treatment, as well as what information and evidence must be submitted by the Veteran, and what information and evidence would be obtained by VA. The November 2007 RO rating decision on appeal reflects the initial adjudication of the claim after issuance of that letter. Hence, the August 2007 letter met all four of Pelegrini's content of notice requirements, as well as the VCAA's timing of notice requirement. 

A previous March 2006 letter provided the Veteran with information pertaining to the assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman. 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matter on appeal. Pertinent medical evidence associated with the claims file consists of the Veteran's service treatment records, post-service VA treatment records, post-service private treatment records, as well as the report of a May 2014 VA examination. Also of record and considered in connection with the appeal is the transcript of the January 2009 Board hearing, along with various written statements provided by the Veteran and by his representative, on his behalf. The Board finds that no additional AOJ action to further develop the record in connection with claim decided herein, prior to appellate consideration, is required.

As regards the Board hearing in January 2009, the Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, the Court held that 38 C.F.R.
§ 3.103(c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). Here, the Board finds that there has been compliance with the duties set forth in 38 C.F.R. 3.103(c)(2), and that the Board hearing was legally sufficient. 

Here, during the hearing, the undersigned identified the issues then on appeal, to include the claim herein decided. Also, pertinent to this claim, information was solicited regarding the circumstances of the Veteran's VA treatment for anal fissures and hemorrhoids (including a November 2006 procedure), and whether any treatment providers had related any subsequent neurological difficulties to this surgery. Therefore, not only was the issue "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. Id.at 497. Although the undersigned did not explicitly suggest the submission of particular evidence, as noted below, following the hearing, the claim on appeal was remanded for further development; hence, the Veteran was not prejudiced by any omission in this regard. 

The Board further finds that there has been substantial compliance with the directives of the March 2009 remand. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand confers on the claimant, as a matter of law, the right to compliance with the remand order); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). Pursuant to that remand, additional VA treatment records from Loma Linda VA Medical Center (VAMC) dated April 2007 through May 2011 and Gardena VA Community-Based Outpatient Clinic (CBOC) dated February 2009 through May 2011 were obtained and associated with the claims file. In response to a request for records, an October 2013 statement, Harbor-UCLA wrote that there were no medical records pertaining to the Veteran regarding a colonoscopy. Furthermore, the Veteran underwent VA examination and a medical opinion in this case was obtained in May 2014. Notably, neither the Veteran nor his representative has identified, and the record does not suggest, that there are any additional, existing, outstanding records needed to decide the claim on appeal, nor has the Veteran or his representative assert that the Veteran has been prejudiced by any notice or development deficiency. 

In summary, the duties imposed by the VCAA have been considered and satisfied. The Veteran was notified and made aware of the evidence needed to substantiate this claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter herein decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 539, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

II. Analysis

38 U.S.C.A. § 1151 affords compensation benefits for a "qualifying additional disability" in the same manner as if the additional disability were service connected. The additional disability qualifies for compensation if the disability is not the result of the Veteran's willful misconduct, and the disability was caused by hospital care, medical or surgical treatment, or examination provided under the laws administered by VA. In order to constitute a "qualifying additional disability," the proximate cause of the additional disability must have been (1) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the facility furnishing the care, treatment or examination or (2) an event not reasonably foreseeable. 38 U.S.C.A. § 1151 (West 2002). See also 38 C.F.R. § 3.361 (2013) .

To determine whether a Veteran has an additional disability, VA compares his condition immediately before the beginning of the hospital care, medical or surgical treatment, or examination upon which the claim is based to his condition after such care, treatment, or examination has stopped. VA considers each involved body part separately. See 38 C.F.R. § 3.361(b). 

To establish causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in a Veteran's additional disability. Merely showing that he received care, treatment, or examination and that he has an additional disability does not establish cause. See 38 C.F.R. § 3.361(c)(1). Hospital care, medical or surgical treatment, or examination cannot cause the continuance or natural progress of a disease or injury for which the care, treatment, or examination was furnished unless VA's failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or natural progress. See 38 C.F.R. § 3.361(c)(2). Additional disability caused by a Veteran's failure to follow properly-given medical instructions is not caused by hospital care, medical or surgical treatment, or examination. See 38 C.F.R. § 3.361(c)(3). The proximate cause of disability is the action or event that directly caused the disability, as distinguished from a remote contributing cause. See 38 C.F.R. § 3.361(d). 

To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a Veteran's additional disability, it must be shown that the hospital care, medical or surgical treatment, or examination caused his additional disability (as explained in 38 C.F.R. § 3.361(c)); and VA (i) failed to exercise the degree of care that would be expected of a reasonable health care provider; or (ii) furnished the hospital care, medical or surgical treatment, or examination without a Veteran's or, in appropriate cases, his representative's informed consent. See 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361(d)(1). 

Whether the proximate cause of a Veteran's additional disability was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable, but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. See 38 C.F.R. § 3.361(d)(2).

The Veteran seeks compensation benefits for additional disability that he claims is the result of treatment for rectal pain due to hemorrhoids, performed at the West Los Angeles VAMC in November 2006. In his December 2006 claim, he asserted that he suffered a tear during examination which resulted in severe rectal bleeding, constipation, blood in stool, and hard stool. 

Summarizing the pertinent facts and contentions with the above legal criteria in mind, the record reflects diagnoses of and treatment for hemorrhoids since 1998. In this regard, during treatment in February 2006, the Veteran described painful external hemorrhoids with pruritis and occasional bloody stool since 1998, which constantly irritated him. He indicated that he had tried conservative measures with no success. A March 2006 anoscopy revealed a posterior anal fissure. In July 2006, he complained of severe pain due to an anal fissure. 

During treatment on November 6, 2006, a medical student noted that the Veteran had initially described his hemorrhoids as stage IV, and currently described them as stage II. The Veteran denied any rectal bleeding or pain, and added that he maintained a consistent bowel pattern with daily stool softeners. No external hemorrhoids or fissure were noted on examination. The assessment was a history of anal fissure and hemorrhoids, doing well on current regiment. The following week, the Veteran presented with complaints of rectal pain and blood in the stool 3 to 4 days earlier. He described his pain as level 9 on a scale of 0 to 10, and added that it began on November 8, 2006. 

One week later, he again presented with complaints of continued rectal pain, despite the use of gastrointestinal (GI) advised rectal medications. The nurse practitioner noted that the Veteran appeared to be in significant pain. During a urology consult in December 2006, the Veteran stated that medications he was given for the fissure were not working, and the nurse practitioner noted that he was not able to sit down during the visit, and began crying due to pain. The Veteran was instructed to go to the urgent care clinic, where he stated that he had been seen on November 6, 2006, when a rectal examination was done and, ever since, he had severe rectal pain, which he believed, was due to that examination. The assessment was rectal pain and hemorrhoids, stage II. 

A December 2006 record of treatment reflects that the Veteran was seen one month earlier for an anoscopy, but did not tolerate the procedure secondary to anal pain. The Veteran described anal pain for the past month which had been moderately controlled. An April 2007 anoscopy revealed an anal fissure and internal and external hemorrhoids. 

A December 2006 record of treatment from Harbor UCLA Medical Center reflects that the Veteran described a history of internal hemorrhoids. He stated that he had seen a colorectal surgeon at VA who did an anoscope and felt like he got a tear when it was pulled out. The assessment was presumed internal hemorrhoids versus internal laceration. 

In July 2007, the Veteran sought private treatment from South Bay Surgeons Medical Group. He described severe anorectal pain for five years. He reported that a November colonoscopy at UCLA was normal, but that he developed severe pain thereafter, and continued to have severe anorectal pain. On physical examination, there was severe anorectal spasm. The Veteran was referred to another physician. During treatment the following week, the Veteran indicated that he had severe rectal pain with bowel movements since a 1998 colonoscopy, which was re-exacerbated by another study at VA in November 2006. On examination, anoscopy was painful, but revealed no obvious fissure. Later in July 2007, the Veteran underwent excision and closure of posterior anal fissure and left lateral internal sphincterotomy. 

Pursuant to the March 2009 Board remand, the Veteran was afforded a VA examination in connection with his claim in May 2014. Following review of the claims file, the examiner opined that it was less likely than not that the Veteran's hemorrhoids and anal fissure were caused by carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA. 

The examiner noted that the Veteran had a self-reported history of hemorrhoids and pain with defecation since 1998. The Veteran was also noted to have hemorrhoids and a posterior anal fissure on anoscopy in March 2006 - more than 6 months prior to the anoscopy done in November 2006 which the Veteran attributed as the cause of his anal fissure. While the anoscopy in November 2006 may have caused a flare in his condition, it did not cause his condition. The VA record is incomplete in that the procedure attempt in November 2006 is not documented, however the Veteran clearly had the recurring conditions of hemorrhoids, rectal pain, and posterior anal fissure prior to the procedure.

The examiner reviewed the Veteran's medical records from the VA Greater Los Angeles and noted that the Veteran presented to the Primary Care Clinic at the VA Greater Los Angeles in May 2004 with the complaint blood noted on toilet paper after bowel movement. He reported constipation and painful bowel movement as well. Rectal examination showed no hemorrhoids, no mass, and no other abnormality. No diagnosis was provided and Veteran was to follow-up with his provider at the VA Loma Linda. [He apparently had a colonoscopy at Loma Linda VA for constipation, but the results of this examination were not available in VBMS.] He was seen again in December 2005 with the complaint of constipation and anal pruritis and his physical examination was positive for external hemorrhoids. He was seen in the General Surgery Department at VA Greater Los Angeles in February 2006 at which time he reported a history of hemorrhoids, rectal pain, and occasional bloody bowel movements since 1998 and requested surgical treatment for his hemorrhoids. An anoscopy was scheduled to further evaluate. An anoscopy was performed in March 2006 by the Surgical Service at VA GLA which revealed a posterior anal fissure and the Veteran was prescribed medical treatment for this. 

On follow-up in May 2006, the Veteran reported an improvement in his symptoms. In June 2006, he again presented to Primary Care with worsening pain with bowel movements, again reporting to the Primary Care provider that he had had rectal pain for "years." He was again seen in General Surgery on 10 July 2006 and was counseled on medical and supportive care for his anal fissure. At follow-up in August 2006, and with medical compliance, he again reported an improvement in his symptoms and the recommendation was to continue current treatments. Continued control of symptoms was also noted at General Surgery follow-up in November 2006, but 7 days later again presented to Primary Care with a flare in his symptoms which he attributed to anoscopy in November 2006. Significantly, the examiner wrote that there was no record of an anoscopy being performed by General Surgery in November 2006, only an external rectal examination is documented. A subsequent Surgery note from December 2006 documents that an anoscopy had been attempted in November 2006 but was not completed due to Veteran's report of pain. An anoscopy under anesthesia was done by General Surgery in April 2007 which showed a posterior anal fissure and hemorrhoids. Medical management was again recommended. In June 2007 the Veteran was brought to the WLA ED by ambulance for severe rectal pain. The diagnosis was again anal fissure and surgical follow-up was arranged .

The Veteran was evaluated at Harbor UCLA in December 2006 and reported two months of rectal pain. At that time, he provided history that a VA surgeon had performed an anoscopy resulting in severe pain and probable anal tear. On examination a hemorrhoid but no anal tear was noted and the Veteran was referred to colorectal surgery. A notation in the UCLA record documents that he did not keep this appointment. The Veteran was seen at South Bay Surgical Center in July 2007 and underwent an excision and closure of a posterior anal fissure and a left
lateral sphincterotomy. 

As the May 2014 VA examiner provided a detailed opinion, based on review of the claims file and examination and interview of the Veteran, the Board finds that the opinion provided is probative as on the matters of whether, as a result of VA treatment in November 2006, the Veteran incurred additional disability due to "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care or medical or surgical treatment or an event not reasonably foreseeable." See, e.g., Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (holding that it is the responsibility of the Board to assess the credibility and weight to be given evidence); Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993) (holding that the probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches). 

Thus, the only competent, persuasive opinion to address the matters central to adjudication of the 38 U.S.C.A. § 1151 claim weighs against the claim, and neither the Veteran nor his representative has presented, identified, or even alluded to the existence of any existing, contrary medical opinion-one that, in fact, supports this claim. 
 
Furthermore, to whatever extent the Veteran and/or his representative attempt(s) to establish the Veteran's entitlement to compensation under U.S.C.A. § 1151 on the basis of lay assertions, alone, such attempt must fail. 

The Board acknowledges that a layperson is competent to assert matters within his or her personal knowledge, to include the occurrence of observable events; or the presence of disability or symptoms of disability subject to lay observation or otherwise perceived through one of the senses (see, e.g., Jandreau v. Nicholson, 492 F.3d. 1372 (2007)), and that lay persons may be competent to provide opinions on some medical issues (see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011)). However, in this case, the specific matters of whether the Veteran has anal fissures with hemorrhoids, as a result of VA medical treatment, and, if so, whether such disability is the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA physicians, or an event not reasonably foreseeable, are matters that fall outside the realm of common knowledge of a lay person. See Jandreau, 492 F.3d at 1377, note 4 (lay persons are not competent to diagnose cancer). As neither the Veteran nor is representative is shown to be other than a layperson without appropriate training and expertise, neither is competent to render a probative (i.e., persuasive) opinion on the complex medical matters upon which this claim turns. See, e.g., Bostain v. West, 11 Vet. App. 124, 127 (1998). Hence, lay assertions in this regard have no probative value.

Under these circumstances, the Board finds that the claim of entitlement to compensation benefits, pursuant to the provisions of 38 U.S.C.A. § 1151, for anal fissures with hemorrhoids as a result of VA medical treatment must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against this claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

The claim for compensation benefits, pursuant to the provisions of 38 U.S.C.A. § 1151, for anal fissures with hemorrhoids, as a result of VA medical treatment is denied.



____________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs