Citation Nr: 1703139 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 12-17 589 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for a bilateral knee disability. 

2. Entitlement to service connection for a bilateral foot disability.

3. Entitlement to service connection for skin disability. 

4. Entitlement to service connection for gastrointestinal disability.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

N. Rippel, Counsel


INTRODUCTION

The Veteran had active duty from January 1988 to July 1988 and from November 1990 to August 1991, to include service in South West Asia. The Veteran also had Reserve service to include periods from November 1987 to July 1991. 

These matters come to the Board of Veterans' Appeals (Board) on appeal from a January 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

The Veteran testified at a hearing before a Veterans' Law Judge (VLJ) in March 2013. The Veteran also testified at a hearing before a Decision Review Officer (DRO) in April 2012. In August 2016, the Veteran was informed that the VLJ who conducted his March 2013 hearing was currently unavailable to participate in a decision in this appeal, and was advised that he could be provided a further hearing before another VLJ. He did not request such a hearing within the allotted 30 days to do so, and the case will proceed. 

In May 2015, the Board issued a decision remanding the issues of entitlement to service connection for a bilateral knee disability, a bilateral foot disability, a skin disability, and a gastrointestinal disability to the Agency of Original Jurisdiction (AOJ). As sufficient efforts were made to obtain the noted medical and service personnel records, and the requested medical opinions were obtained with regard to issues 1 through 3, the Board finds the directives have been substantially complied with, and the matter again is before the Board. Stegall v. West, 11 Vet. App. 268, 271 (1998).

The issue of entitlement to service connection for a gastrointestinal disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. A bilateral knee disability was not manifest in service or within one year of discharge from active duty, and is unrelated to service.

2. A bilateral foot disability was not manifest in service or within one year of discharge from active duty, and is unrelated to service.

3. Skin disability was not manifest in service or within one year of discharge from active duty, and is unrelated to service.


CONCLUSIONS OF LAW

1. A bilateral knee disability was not incurred in or aggravated by service, and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).

2. A bilateral foot disability was not incurred in or aggravated by service, and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).

3. A skin disability was not incurred in or aggravated by service, and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R. § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. 

 Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. The RO provided pre-adjudication VCAA notice by a letter dated in May 2009. 

 Duty to Assist

VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the claims. Service treatment records, post-service VA treatment records, identified private treatment records, and lay statements have been associated with the record. As noted above, service records were obtained for the Veteran's reserve periods of service subsequent to the Board remand decision. 

The Veteran was afforded examinations as reflected in Disability Benefits Questionnaires for Skin Disease, Lower Extremities and the Feet, as well as a VA Gulf War examination, in July 2016. These examinations addressed the issues being decided in this decision. The examiners reviewed the Veteran's claims file, examined the Veteran, and provided opinions. The opinions provided were thorough and fully adequate. See Barr v. Nicholson, 21 Vet. App. 303 (2007). In the remand, the Board instructed that the RO attempt to obtain a copy of an additional 2012 Gulf War examination referenced in the record, and, if not, to obtain additional examination. Here, there does not appear to have been an actual additional 2012 examination located, and the July 2016 examinations were ordered. 

As the Veteran has not identified any additional evidence pertinent to the claims, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claims is required to comply with the duty to assist.

II. Analysis

As an initial matter, the Board has considered the fact that the Veteran served in the Southwest Asia Theater of operations during the Persian Gulf War. Nevertheless, as discussed below, the Veteran is currently diagnosed with known clinical diagnosis as to pes planus of the bilateral feet and lipomas of the skin, and, for a period of time during the claim, bilateral patellar tendonitis. See July 2016 VA examination reports. Therefore, these do not constitute qualifying chronic disability. As such, the provisions of 38 U.S.C.A. § 1117 do not apply. 

Service connection will be granted if it is shown that the Veteran suffers from a disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in the line of duty, during active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d); see also Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). 

In order to establish service connection on a direct basis, the record must contain competent evidence of: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The requirement for a current disability is satisfied if the disability is shown at any time subsequent to filing the claim, even if not shown currently. McLain v. Nicholson, 21 Vet. App. 319 (2007).

Some chronic diseases may be presumed to have been incurred in service, if they become manifest to a degree of ten percent or more within the applicable presumptive period. 38 U.S.C.A. §§ 1101 (3), 1112(a); 38 C.F.R. §§ 3.307 (a), 3.309(a). For those listed chronic conditions, a showing of continuity of symptoms affords an alternative route to service connection. 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F. 3d 1331 (Fed. Cir. 2013). Arthritis and malignant tumors are among the listed conditions, subject to a one year presumptive period. 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159 (a)(1). Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet.App. 428, 435 (2011). A layperson is generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997). See also Bostain v. West, 11 Vet. App. 124, 127 (1998).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Lay evidence cannot be determined to be not credible merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). However, the lack of contemporaneous medical evidence can be considered and weighed against a Veteran's lay statements. Id. Further, a negative inference may be drawn from the absence of complaints or treatment for an extended period. Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

 Bilateral knee disability

As will be explained below, service connection is not warranted for this disability. Specifically, while there was a current disability at one point during the pendency of the claim, for the following reasons, the preponderance of the evidence is against a finding of a nexus between any such current knee disability and the Veteran's active service. 

The Board notes that there are no findings of knee arthritis; all X-rays during the pendency of the claim are negative as to the knees. See 2016 VA examination report. Accordingly, service connection pursuant to the presumptions found at 38 C.F.R. §§ 3.307, 3.309 is not in order. 

Service treatment records show no knee treatment or complaints, and note no knee condition. Lower extremities were normal in clinical examination in November 1987, January 1991 and July 1991. Neither private nor VA treatment records show a diagnosis of a knee disability but they do note complaints of knee pain. 

A July 1994 Persian Gulf War examination includes reports of joint pain beginning in 1991. He reported that the pain went away in all joints except for the right knee. He also reported that he hurt his knees jumping off a trailer in 1993 while on orders. This was assessed as probably a tendonitis secondary to the jump from the trailer in which he probably pulled loose some of the small insertional fibers of the tendon that attaches to the inferior pole of the patella. It was noted as similar in nature to tennis elbow and it was thought that it would probably continue to give him intermittent problems on and off for some time. It was not severe or serious but was uncomfortable. X-rays of the knees showed no bony abnormalities. 

A January 2010 letter from his private physician indicates that many of the Veteran's complaints, including reported persistent knee pain, could have been acquired during his time in active duty from 1991 to 1993. 

A report of VA examination dated in October 2015 noted diagnoses of knee tendonitis/tendinosis, diagnosed in 1994, and patellofemoral pain syndrome, diagnosed at the instant examination. The examiner commented that the Veteran's knee conditions have clear and specific etiologies and diagnosis, they all result from a complex interplay of multiple factors, including joint integrity, genetic predisposition, local inflammation, mechanical forces, and cellular and biochemical processes. None are due to environmental hazards such as dust, oil well fires, pesticides, infectious diseases, inhalation of solvents, fuel fumes or ultra-fine-grain sand, or administration of vaccines. For this reason the examiner found the diagnoses unrelated to exposure to environmental hazards experienced during the Gulf War. An additional October 2015 opinion from this examiner reflects that the diagnosis was bilateral patellar tendonitis. She noted that the condition did not manifest until more than a year following service, and, she opined that it is less likely than not that his patellar tendonitis had its onset in service. 

The Board remanded this matter in part to identify any present knee disorders and to determine whether they are as likely as not related to service. Such an examination was accomplished in July 2016. The examining physician noted that she reviewed the claims folder, including VA and private medical records, as well as lay statements. The physician explained that the Veteran does not have a current knee disability. She noted that he told her that around 1991, while with his Reserve Unit for annual training, he jumped down off a trailer and hurt his knees. He stated that he did not seek treatment, but he did report it on the 1994 Gulf War examination. At that time he stated that he had X-rays and was told that he had a tear in his knee. He stated that he has just treated with pain medication and that the knees primarily hurt when he walks stairs or kneels, but not every time. He stated that it is not really bothering him anymore and he had thought that the claims person had removed the claim. He reported that he had been using Wii and was now running too. 

Examination of the knees was normal, with no evidence of pain or tenderness on palpation. X-rays were negative. The examiner commented that there is no current chronic disability diagnosis because at the moment there were no symptoms and no current clinical objective evidence of diagnosable disease or pathology. She noted that he stated that his knee condition had resolved, so no diagnosis. 

Congress specifically limits entitlement to service-connected disease or injury where such cases have resulted in a disability and in the absence of a proof of present disability there can be no claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The term "disability" as used for VA purposes refers to impairment of earning capacity due to disease, injury, or defect, rather than the disease, injury, or defect itself. Allen v. Brown, 7 Vet. App. 439, 448 (1995). The Board finds the July 2016 examination to be probative evidence as to whether there is current knee disability. It is highly persuasive in this regard, primarily because it contains a detailed rationale, is based on a review of the entire record, and is well-supported with references to the record. 

However, the Board is mindful of McLain v. Nicholson, supra., and notes the diagnosis of patellar tendonitis during the pendency of the claim, in October 2015. The Board thus concludes that the preponderance of the evidence is against a finding that there is a current disability that is due to service. The sole diagnosis during the pendency of this claim, found in the October 2015 examination report, is patellofemoral pain syndrome/tendonitis. The Board points out that pain is not a disability for which service connection can be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999); see also Brammer v. Derwinski, 3 Vet. App. at 225 ("Congress specifically limits entitlement to service-connected disease or injury to cases where such incidents have resulted in a disability."). Nonetheless, owing to the alternate diagnosis of patellar tendonitis also noted in the October 2015 opinion, the Board acknowledges that there was a disability during the pendency of the claim. However, the October 2015 opinion that the condition is less likely than not related to service is uncontroverted by any other medical evidence. 

To the extent that the claimant himself suggests he has a knee disability that is related to his service, while he can report pain, the diagnosis of a specific condition is not a simple matter capable of lay observation or diagnosis. His opinions as to the existence of a current disability linked to events in service are less probative than the considered medical opinions from health care providers who reviewed the record, examined him and offered conclusions based on their medical expertise.

Whereas there is no diagnosed disability of the knees as shown by the July 2016 VA examination, and the October 2015 examiner found that the then-present tendonitis was not related to service, the preponderance of the evidence is against the claim. Therefore, his claim must be denied. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102, Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 Bilateral Foot and Skin Disabilities

The Veteran has current diagnoses of bilateral pes planus and lipomas, as noted in his July 2016 VA examinations. Thus, the first Shedden element is met as to these two claims. 

As to the second Shedden element, in-service incurrence or aggravation of a disease or injury, the Veteran urges that he developed a foot disability, stress fracture, when his feet were overused in basic training. He also asserts that he developed lipomas a couple of weeks after he got out of service. However, for the following reasons, the preponderance of the evidence is against a finding of a nexus between these current disabilities and the Veteran's active service. 

 A. Foot

There are no findings of foot arthritis; all X-rays during the pendency of the claim show pes planus but are negative as to the bony or acute osseous abnormalities. See 2016 VA examination of the feet. Accordingly, service connection pursuant to the presumptions found at 38 C.F.R. §§ 3.307, 3.309 is not in order. 

Service treatment records of February and March 1988 show treatment for bilateral foot stress reaction. Treatment was with hot foot soaks. There are no additional service treatment records for this condition. The feet were normal in clinical examination in November 1987, January 1991 and July 1991. Pes planus was not indicated. 

Neither private nor VA treatment records show a diagnosis of or treatment for foot bilateral feet stress fractures from date of discharge from active duty military service to the present. 

A July 1994 Persian Gulf War examination includes no complaints or findings related to the feet. Lower extremities examination does not note any foot abnormality. 

A January 2010 letter from his private physician indicates that many of the Veteran's complaints could have been acquired during his time in active duty from 1991 to 1993. It does not mention any foot complaints.

A report of VA examination dated in October 2015 noted no current diagnosis of either foot based on no symptoms on examination and no objective evidence of diagnosable disease or pathology with normal examination. The examiner noted that, therefore, the symptom of bilateral foot pain not only fails to meet the criteria for a specific diagnosis, it does not meet the criteria of an undiagnosed illness, a diagnosable chronic multisymptom illness with unexplained etiology, a diagnosable chronic multisystem illness with partially explained etiology or a disease with a clear and specific diagnosis. Therefore, she noted the condition was not related to a specific exposure event experienced by the Veteran's service in Southwest Asia. 

The Board remanded this matter in part to identify any present feet disorders and to determine whether they are as likely as not related to service. Such an examination was accomplished in July 2016. The examining physician noted that she reviewed the claims folder, including VA and private medical records, as well as lay statements. The physician diagnosed pes planus. X-rays were negative. She noted that as a known clinical diagnosis, this was not an undiagnosed illness, and it also was not related to a specific exposure event experienced by the Veteran during service in Southwest Asia. She added that the condition was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event or illness. The rationale was that the January 1991 and July 1991 periodic reports of medical examination showed no relevant complaints. Therefore, it is less likely than not (less than 50 percent probability) that his flat feet are related to any incident during active service, to include the Veteran's service in the Persian Gulf. 

As noted, the records contain no medical opinions linking the Veteran's current foot disability, pes planus, to his active duty service generally or any of the aforementioned service-related acts that produced a stress reaction to the feet in service. Service treatment records definitively do not indicate pes planus. Furthermore, the 2016 VA examiner has opined against a relationship between the current disability and service. Based on the competent and credible lay and medical evidence of record, the Board finds that the preponderance of the evidence is against a finding that the Veteran's current foot disability of pes planus is causally related to his active duty service. As such, the third Shedden element has not been met, and direct service connection is not warranted.

In making this decision, the Board has fully considered the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (noting that a Veteran is competent to report on that of which he or she has personal knowledge). However, his opinion as to the etiology of his current foot disability of pes planus is outweighed by the medical opinion evidence, particularly the 2015 and 2016 VA opinions discussed above. In this regard, the examiners considered the reported history in arriving at their opinions, as well as the contemporaneous records and service treatment records. The Board does, in fact, adopt these opinions to determination that service connection for a bilateral foot disability is not warranted. 

Although the Veteran has established a current disability and an in-service injury, event or disease, the preponderance of the evidence is against a finding that the Veteran's a bilateral foot disability is causally related to his service. Since the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107 (b); Ortiz, 274 F.3d at 1364; Gilbert, 1 Vet. App. at 55-57; 38 C.F.R. § 3.102. For these reasons, the claim is denied.

 B. Skin

There are no findings of malignant tumors. VA examinations in October 2015 and July 2016 characterize the current lipomas as benign. Accordingly, service connection pursuant to the presumptions found at 38 C.F.R. §§ 3.307, 3.309 is not in order. 

Service treatment records show that skin was normal in clinical examination in November 1987, January 1991 and July 1991. 

A July 1994 Persian Gulf War examination reflects the Veteran's complaints that in 1991 he noticed lumps at the right thigh and both forearms, at the lower anterior and right posterior chest wall. He reported that he had not sought treatment but that the lumps of the right thigh and also at the right posterior chest wall hurt once in a while. He also reported that he had skin rashes at both inner thighs in 1991 and this went away without medication being prescribed by any doctor. He applied Calamine Lotion and Vaseline and he has had no recurrence. On examination, there were nontender masses of different sizes at both forearms, right thigh, right posterior lower chest wall and left lower chest wall anteriorly. 

A January 2010 letter from his private physician indicates that many of the Veteran's complaints, including a skin rash since 1991, could have been acquired during his time in active duty from 1991 to 1993. 

A report of VA examination dated in October 2015 noted multiple lipomas which represented a condition with a clear and specific etiology and diagnosis. The lipomas had not been associated with exposure to environmental hazards such as inhalation of fine grain sand, fuel or solvent fumes, insecticides or pesticides, or multiple vaccines. They were therefore not related to exposure of environmental hazards experienced during military service in southwest Asia. 

The examiner noted that the August 1991 post Gulf War in-service examination was negative, the nodes were noted in 1994 and then again in 2012 dermatology treatment notes. He also noted that the Veteran currently continued with lipomas in the same areas as in 1994. The examiner stated these were superficial subcutaneous lipomas, the most common benign soft tissue neoplasms. The examiner explained as follows:

Frequently, patients may have more than one lipoma, and occasionally they may have a genetic condition (familial multiple lipomatosis) characterized by the development of multiple lipomas in several family members. (1) According to the Gulf War Study the available studies are of insufficient quality, validity, consistency, or statistical power to permit a conclusion regarding the presence or absence of an association between deployment to the Gulf War and skin conditions in humans. 

Therefore, since there was no documentation of lipomas noted while Veteran was on active duty, and lipoma's are the most common benign skin lesions and may be genetic, and studies of Veteran's in Gulf War Region are insufficient in showing a relationship between deployment in the Gulf War and skin conditions, it is less likely than not that his current diagnosed multiple lipomas had its onset in service.

The Board remanded this matter in part to identify any present skin disorders and to determine whether they are as likely as not related to service. Such an examination was accomplished in July 2016. The examining physician noted that she reviewed the claims folder, including VA and private medical records, as well as lay statements. The physician diagnosed multiple lipomas. The opinion was that they were benign skin lesions of unknown etiology, but the tendency to develop them is inherited. It was noted that there was no skin complaints in August 1991. As a known clinical diagnosis, this was not an undiagnosed illness, and it also was not related to a specific exposure event experienced by the Veteran during service in Southwest Asia. The condition was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event or illness. The rationale was that the January 1991 and July 1991 periodic reports of medical examination showed no complaints concerning skin. Therefore, it is less likely than not (less than 50 percent probability) that his lipomas are related to any incident during active service. 

Based on the competent and credible lay and medical evidence of record, the Board finds that the preponderance of the evidence is against a finding that the Veteran's current skin disability of lipomas is causally related to his active duty service. As such, the third Shedden element has not been met, and direct service connection is not warranted. The medically uncontroverted opinion of the 2016 VA examiner, as well as the similar opinion in October 2015, are accorded significant weight in determining the etiology of the current condition. This is because the opinions, particularly the July 2016 one, are based on a review of the record, the Veteran's contentions and examination of the Veteran. 

In making this decision, the Board has fully considered the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (noting that a Veteran is competent to report on that of which he or she has personal knowledge). However, his opinion as to the etiology of his current skin disability of lipomas is outweighed by the medical opinion evidence, particularly the 2015 and 2016 VA opinions discussed above. In this regard, the examiners considered the reported history in arriving at their opinions, as well as the contemporaneous VA records and service treatment records. The Board does, in fact, adopt these expert medical opinions to determination that service connection for a skin disability is not warranted. 

Although the Veteran has established a current disability and an in-service injury, event or disease, the preponderance of the evidence is against a finding that the Veteran's skin disability is causally related to his service. Since the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107 (b); Ortiz, 274 F.3d at 1364; Gilbert, 1 Vet. App. at 55-57; 38 C.F.R. § 3.102. For these reasons, the claim is denied.



ORDER

Service connection for a bilateral knee disability is denied. 

Service connection for a bilateral foot disability is denied.

Service connection for skin disability is denied. 


REMAND

Additional action is warranted prior to the adjudication of the claim of service connection for gastrointestinal disability. Here, the examiner in July 2016 specifically noted that she could not render a full opinion, particularly with regard to the irritable bowel syndrome (IBS) aspect of the Veteran's gastrointestinal claim, since the Veteran had not undergone a full work-up for IBS. See July 2016 VA examiner's opinion that the Veteran's current symptoms do not comprise an undiagnosed illness because the Veteran has not had a complete workup to rule diagnosable illness. Under the circumstances, the VA examination is found to be inadequate, and a new VA examination is necessary. McClendon v. Nicholson, 20 Vet. App. 79 (2006); Barr v. Nicholson, 21 Vet. App. 303 (2007). The Board will order that additional examination be conducted in order that a complete workup as referenced by the VA physician is accomplished. Because any additional information obtained through this further workup may be relevant to the claim as a whole, the Board will continue to characterize this claim as one for gastrointestinal disability and remand it as a whole. 

Accordingly, the case is REMANDED for the following action:

1. The Veteran should then be afforded an additional VA gastrointestinal examination, in order to accurately determine the exact nature and etiology of his current claimed gastrointestinal disability, specifically to include any IBS. This should entail a complete workup with regard to any diagnosable IBS illness as referenced by the VA physician in July 2016. 

Following completion of the aforementioned gastrointestinal examination, the examiner should specifically comment as to whether the Veteran currently suffers from IBS or any other gastrointestinal disability. If he suffers from a gastrointestinal disorder to include IBS, the examiner should indicate whether such disorder at least as likely as not had its origin during, or is in some way the result of, the Veteran's period of active military service to include his Gulf War service. 

Following completion of the examination, the examiner should indicate whether the Veteran meets the diagnostic criteria for medically unexplained chronic multisymptom illnesses. The examiner should also indicate whether the Veteran has any symptoms that cannot be attributed to a known clinical diagnosis.

A complete rationale must be provided for any opinion offered, and all information and opinions, once obtained, must be made a part of the Veteran's claims folder. In addition, the examiners must specify in their reports that the claims file has been reviewed.

2. The AOJ should then review the aforementioned report to ensure that it is in complete compliance with the directives of this REMAND, and that the examiner has documented consideration of all records contained in Virtual VA and the Veterans Benefits Management System. If the reports are deficient in any manner, the AOJ must implement corrective procedures.

3. The AOJ should then readjudicate the Veteran's claim for service connection which is currently on appeal. That readjudication should include any additional development deemed necessary. Should the benefits sought on appeal remain denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case (SSOC) which contains notice of all relevant action taken on the claims for benefits since the issuance of the most recent SSOC in July 2016. An appropriate period of time should be allowed for response.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs