Citation Nr: 1801831 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 09-40 611 ) DATE
 )
 ) 

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUES

1. Entitlement to service connection for fibromyalgia, to include as secondary to posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for sexual dysfunction, to include as secondary to PTSD.

3. Entitlement to service connection for chronic tiredness.

4. Entitlement to service connection for a neurological disability, to include as due to exposure to contaminated water at Camp Lejeune.

5. Entitlement to service connection for a gastrointestinal disorder and hiatal hernia, to include as secondary to PTSD.

6. Entitlement to service connection for tension headaches, to include as secondary to PTSD.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

B. Gabay, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1985 to February 1992, and from February 1992 to October 1998.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania.

A March 2008 administrative decision of the VA's Roanoke, Virginia, RO found that the Veteran's second period of service from February 1992 to October 1998 was less than honorable. The Board affirmed this decision in April 2011. Thus, the Veteran is ineligible for VA benefits during this period.

The Board previously denied these matters in an April 2011 decision. In February 2012, the Court of Appeals for Veterans Claims (Court) granted a Joint Motion for Remand filed by the parties requesting that the portion of the April 2011 decision that denied the claims for service connection be vacated and remanded. Thereafter, the Board remanded these matters in October 2012 and August 2014 to obtain VA medical examinations.




FINDINGS OF FACT

1. The competent and credible evidence indicates that the Veteran does not have a current diagnosis of fibromyalgia.

2. The competent and credible evidence indicates that the Veteran does not have a current diagnosis of sexual dysfunction.

3. The competent and credible evidence indicates that the Veteran does not have a current diagnosis of chronic tiredness.

4. The competent and credible evidence indicates that the Veteran does not have a current diagnosis of a neurological disability.

5. The competent and credible evidence indicates that the Veteran does not have a current diagnosis of a gastrointestinal disorder or hiatal hernia.

6. The competent and credible evidence indicates that the Veteran does not have a current diagnosis of tension headaches that is etiologically related to her service.


CONCLUSIONS OF LAW

1. The criteria for establishing service connection for fibromyalgia are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

2. The criteria for establishing service connection for sexual dysfunction are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

3. The criteria for establishing service connection for chronic tiredness are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

4. The criteria for establishing service connection for a neurological disability are not met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

5. The criteria for establishing service connection for a gastrointestinal disorder and hiatal hernia are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

6. The criteria for establishing service connection for tension headaches are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the Veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

Merits of the Claim

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. 
§ 3.303. Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, to prevail on a claim of service connection on the merits, there must be competent evidence of (1) a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence or other competent evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. See, e.g., Hickson v. West, 12 Vet. App. 247 (1999); Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

In evaluating the evidence in any given appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307, 310-11 (1999). In this regard, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Owens v. Brown, 7 Vet. App. 429, 433 (1995).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. 
§ 5107(b) (2012); 38 C.F.R. § 3.102 (2017). When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

As stated above, Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C.A. §§ 1110, 1131 (2012). In the absence of proof of present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Service connection presupposes a diagnosis of a "current disability." See Rabideau v. Derwinski, 2 Vet. App. 141 (1992). A "current disability" means a disability shown by competent evidence to exist. See Chelte v. Brown, 10 Vet. App. 268 (1997).


a. Fibromyalgia

Regarding the Veteran's claim of fibromyalgia, service treatment records do not indicate any complaint or treatment for fibromyalgia. The Veteran underwent a November 2015 VA examination which noted that the Veteran claimed that she had musculoskeletal pain stemming from a fall from a truck in the 1980s. Examination revealed unilateral musculoskeletal and low back pain, as well as some general joint pain, but no diagnosis of fibromyalgia. Similarly, a March 2016 VA Disability Benefits Questionnaire (DBQ) concluded that the Veteran's claim of fibromyalgia is "not substantiated by current medical diagnosis or ongoing medical treatment." 

In her April 2016 VA examination, the Veteran stated that her pain is located primarily in her legs and has lasted about 15 to 20 years, from the time she fell off a truck while in service. She also reported constant pain in each joint in the lower extremities and her low back. However, the April 2016 examiner opined that nothing in the Veteran's military or medical history documented any symptoms consistent with fibromyalgia. Rather, the examiner concluded the etiology of the Veteran's back pain to be arthritic changes of the spine and sacroilitis, and of her knee and leg pain to be from mild tibial changes. Additionally, a March 2016 DBQ concluded that the Veteran's claimed condition of fibromyalgia was less likely than not related to service.

The Board notes that service connection may also be established on a secondary basis for a disability which is "proximately due to or the result of a service-connected disease or injury." 38 C.F.R. § 3.310(a) (2017). Establishing service connection on a secondary basis requires evidence sufficient to show the following: (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Where a service-connected disability aggravates a nonservice-connected condition, a Veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Id.; 38 C.F.R. § 3.310(b) (2017). Here, however, the March 2016 DBQ found that a current diagnosis of fibromyalgia could not be substantiated, and therefore, the claimed disability cannot be secondarily related to the Veteran's service-connected PTSD.

Although the Veteran is competent to report her symptoms per Layno v. Brown, 6 Vet. App. 465 (1994), she is a layperson who is not competent to give a medical opinion on diagnosis, causation, or aggravation of a medical condition. Bostain v. West, 11 Vet. App. 124 (1998). As a lay person, the Veteran is also not competent to provide evidence as to complex medical questions, to include the possibility of a causal relationship between an injury in service and any current symptomatology. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Thus, the Veteran's statements are afforded less probative value with respect to the medical question of whether she has current diagnoses of her claimed conditions.

There is no medical evidence or other competent evidence relating the Veteran's claimed condition of fibromyalgia to her military service. Thus, a VA medical examination addressing the etiology of this condition is not required. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). The Federal Circuit held that while there must be "medically competent" evidence of a current disability, "medically competent" evidence is not required to indicate that the current disability may be associated with service. Waters v. Shinseki, 601 F.3d 1274, 1277 (Fed. Cir. 2010); Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir. 2010). On the other hand, a conclusory generalized lay statement suggesting a nexus between a current disability and service would not suffice to meet the standard of subsection (B), as this would, contrary to the intent of Congress, result in medical examinations being "routinely and virtually automatically" provided to all veterans claiming service connection. Waters, 601 F.3d at 1278-1279.

The preponderance of the evidence is against this claim and the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). As such the Veteran's claim for service connection for fibromyalgia must be denied.



b. Sexual Dysfunction

Regarding the Veteran's claim for sexual dysfunction, the evidence of record suggests that the Veteran's first complaint of sexual dysfunction occurred in a 2011 gynecological examination, nearly 20 years after her last period of active service for which she is eligible to receive VA benefits. She has complained of painful intercourse throughout the appeal period. 

The Veteran underwent a VA examination in February 2013 in which the examiner noted a diagnosis of uterine fibroids; however, the Veteran had never received treatment for the fibroids. She complained of constant, severe pain which increases with the weather. The examiner also noted a mildly enlarged gravid uterus and a right-sided uterine fibroid.

During a November 2015 VA examination, the Veteran complained of "sharp or cutting" pain in the lower quadrant of the abdomen. However, the examiner concluded that her claimed sexual dysfunction was not substantiated by current medical diagnosis, treatment, or subjective reports from the Veteran. This sentiment was echoed in a March 2016 VA DBQ, in which the examiner found that the Veteran did not have a diagnosable condition relating to sexual dysfunction. As such, the March 2016 examiner concluded that the Veteran's claimed condition of sexual dysfunction was less likely than not related to service.

During an April 2016 VA examination, the Veteran reported two types of pain in her abdomen: a chronic, daily pain located in the abdomen, and a second "scissor-like" pain that starts in her vagina and radiates to her low back and posterior pelvis. When the latter pain arises, she reported being unable to walk. The Veteran also reported painful intercourse, specifically with lower abdominal pressure. She reports thinking about the military sexual trauma she experienced (and for which she is service-connected). However, the examiner concluded that the Veteran's complaints of sexual dysfunction as it manifests as painful intercourse is consistent with her 2011 diagnosis of uterine fibroids. 

Further, the March 2016 DBQ found anxiety in sexual relations to be consistent with PTSD symptomatology, and as such, does not warrant a separate diagnosis. However, the examiner concluded that there is no pathophysiological evidence to suggest that the physical pain experienced by the Veteran during sex is secondary to PTSD. As such, the Veteran's claim of sexual dysfunction secondary to PTSD must also be denied.

The Board has considered the Veteran's lay statements regarding her symptoms and acknowledges the Veteran's competency to report her symptoms. Layno, 6 Vet. App. 465. However, the Board finds the medical opinions of the VA examiners to be more credible. 

The preponderance of the evidence is against this claim and the doctrine of reasonable doubt is not for application. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 55-57. As such the Veteran's claim for service connection for sexual dysfunction must be denied.

c. Chronic Tiredness

Regarding the Veteran's claim for chronic tiredness, the Veteran stated in the April 2016 VA examination that she is "just always tired." She reports being unable to sleep well and being fatigued throughout the day. The Veteran reported that while on active duty, she "would just pass out and fall asleep in different classes because [she] was so tired." However, she reports no medical evaluation for these symptoms, and indeed, there is no pathology to suggest these symptoms are diagnosable. In November 2015, March 2016, and April 2016, the Veteran underwent VA medical examinations, all of which concluded that there was no clinical or subjective evidence that the Veteran carried a diagnosis of a chronic fatigue related condition. 

The Board has considered the Veteran's lay statements regarding her symptoms and acknowledges the Veteran's competency to report her symptoms. Layno, 6 Vet. App. 465. However, the Board finds the medical opinions of the VA examiners to be more credible. 
The preponderance of the evidence is against this claim and the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 55-57. As such the Veteran's claim for service connection for chronic tiredness must be denied.

d. Neurological Disorder

Regarding the Veteran's claim of a neurological disorder, the only mention of treatment to the Veteran's right leg while in service was in January 1989, when the Veteran pulled a groin muscle after falling down a hill. There is no mention of any additional right leg injury, nor of any neurological treatment while in service.

In a November 2015 VA examination, the Veteran described her symptoms as "feels like my circulation is cut off sometimes in my limbs," and stated that she has this sensation more often on her right side than her left. She reported the sensation as infrequent and intermittent in nature. The examiner stated that there was no evidence of any sort of neuropathy or other neurological condition. Rather, her strength, reflexes, sensation, and gait were all normal. The examiner concluded that the Veteran had no symptoms that were attributable to a peripheral nerve condition. 

During the April 2016 VA medical examination, the Veteran reported that she had experienced leg pain for roughly 15 to 20 years, after she fell off a truck while in service. Unfortunately, no documentation of this event could be found in her service treatment records. The Veteran reported pain in her posterior buttock and thigh, at the knee, and in her left foot. She reported tingling in both legs. However, no medical examination has diagnosed the Veteran with a neurological disorder. A March 2016 DBQ concluded that her claimed condition of a neurological disorder was less likely than not related to service. Likewise, the April 2016 examiner concluded that the Veteran's history and physical examination was not consistent with any diagnosis of a central or peripheral nerve disorder.

The Board acknowledges the Veteran's assertion that the claimed condition of a neurological disorder may have been exacerbated by her exposure to contaminated water while she was stationed at Camp Lejeune. VA has acknowledged that persons residing or working at the U.S. Marine Corps Base Camp Lejeune from August 1953 through December 1987 were potentially exposed to drinking water contaminated with volatile organic compounds (VOCs). See Veterans Benefits Administration (VBA) Fast Letter 11-03 (last updated January 28, 2013). In the early 1980s, it was discovered that two on-base water-supply systems were contaminated with the VOCs trichloroethylene (TCE), a metal degreaser, and perchloroethylene (PCE), a dry-cleaning agent. Benzene, vinyl chloride, and other VOCs were also found to be contaminating the water-supply systems. See VBA Training Letter 11-03 (Revised) (November 29, 2011) (citing the National Academy of Sciences' National Research Council (NRC)'s report, "Contaminated Water Supplies at Camp Lejeune, Assessing Potential Health Effects.") Until scientific evidence shows otherwise, it will be assumed by VA that any given Veteran-claimant who served at Camp Lejeune was potentially exposed in some manner to the full range of chemicals known to have contaminated the water there between 1957 and 1987. Id. at p. 6. Fourteen diseases have been placed into the category of limited/suggestive evidence of an association with the contaminating water-supply system at Camp Lejeune. These fourteen diseases are: esophageal cancer, lung cancer, breast cancer, bladder cancer, kidney cancer, adult leukemia, multiple myeloma, myelodysplastic syndromes, renal toxicity, hepatic steatosis, female infertility, miscarriage with exposure during pregnancy, scleroderma, and neurobehavioral effects. 


First, because the Veteran was stationed at Camp Lejeune between 1985 and 1987, the RO has already conceded that the Veteran was exposed to contaminated water. However, it is noted that the Veteran's claimed condition of a neurological disorder is not listed as a disease subject to presumptive service connection for Camp Lejeune water contamination. Nevertheless, the Federal Circuit has established that when a claimed disorder is not included as a presumptive disorder, direct service connection may nevertheless be established by evidence demonstrating that the disease was in fact "incurred" during the service. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

To that end, in a November 2015 VA examination in which the medical examiner was asked to opine as to whether the Veteran's conditions were related to exposure to contaminated water at Camp Lejeune, the examiner concluded that no such correlation existed. Specifically, the examiner stated that there could be no nexus between exposure to contaminated water and a non-existent diagnosis. The Board finds the examiner's opinion adequate, competent, and credible. Thus, because the Veteran does not have a current diagnosis of a neurological disorder, no nexus can be established between the Veteran's claimed condition and Camp Lejeune.

The Board has considered the Veteran's lay statements regarding her symptoms and acknowledges the Veteran's competency to report her symptoms. Layno, 6 Vet. App. 465. However, the Board finds the medical opinions of the VA examiners to be more credible. 

The preponderance of the evidence is against the claim and the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). As such the Veteran's claim must be denied.



e. Gastrointestinal Disorder and Hiatal Hernia

Regarding the Veteran's claim of a gastrointestinal disorder and hiatal hernia, service treatment records indicate that the Veteran was seen for abdominal pain while in service in August 1985. She was given Mylanta. No other treatments for stomach issues were documented in the claims file until March 2011, when the Veteran sought treatment for acid reflux. Subsequently in a May 2011 VA treatment record it was noted that the Veteran's GERD had resolved and that she was no longer taking medication for that disorder.

The Veteran underwent a VA medical examination in February 2013 in which she reported chronic abdominal pain. The examiner noted no incapacitating episodes or functional impact. The examiner concluded that the Veteran did not have any diagnosable condition, much less one related to service. The Veteran was again seen by a VA examiner in November 2015 for a stomach condition, though she reported that the issue had resolved. A March 2016 DBQ found the Veteran's complaints of a gastrointestinal disorder and hiatal hernia to not be substantiated by current medical diagnosis or ongoing medical treatment, and as such, found the claimed condition less likely than not related to service.

The Veteran was noted to have a diagnosis of hiatal hernia in the April 2016 VA examination. The Veteran described having Gastroesophageal reflux disease (GERD) for roughly 30 years, and that the symptoms included "mid sternal squeezing pain." The examiner noted that there was no documentation of GERD, hiatal hernia, or any indigestion condition, symptoms, or diagnosis while in service, despite the notation of the Veteran having been prescribed Mylanta for in-service abdominal pains. The examiner concluded that the Veteran's current symptoms were, in fact, associated with the Veteran's hiatal hernia, which was diagnosed in a 2011 CT scan. 

Yet, there is no medical evidence of record linking her current hiatal hernia diagnosis to her active duty service. As noted above, the record indicates that upon discharge from service, the Veteran did not seek treatment for stomach issues until 2011, nearly 26 years after she was treated for abdominal pain in service. Due to the lack of continuity of symptomatology, there is insufficient evidence to provide a medical nexus.

Finally, regarding secondary service connection, the March 2016 examiner concluded that there was no subjective or scientific evidence to conclude that the Veteran's claimed gastrointestinal condition or hiatal hernia could be pathophysiologically related to the Veteran's service-connected PTSD. Thus, the Veteran's claim for secondary service connection must also be denied.

The Board has considered the Veteran's lay statements regarding her symptoms and acknowledges the Veteran's competency to report her symptoms. Layno, 6 Vet. App. 465. However, the Board finds the medical opinions of the VA examiners to be more credible. 

The preponderance of the evidence is against the claim and the doctrine of reasonable doubt is not for application. See 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). As such the Veteran's claim must be denied.

f. Tension Headaches

In her November 2015 and April 2016 VA examinations, the Veteran reported migraine headaches with emotional stress occurring roughly one to two times per week, each time lasting roughly one to two hours. Associated symptoms include blurred vision and pain in both temples and behind the eyes. The examiners determined that the Veteran's headaches were consistent with tension headaches, not migraines.

However, the only documentation in the Veteran's service treatment records for headaches was during the Veteran's dishonorable period of service. Additionally, the April 2016 examiner noted only a single treatment for migraine headaches after service, which was in 2011. The March 2016 DBQ concluded that there is no continuity of symptomatology between the Veteran's in-service treatment for headaches and her current diagnosis of tension headaches, and as such, found the Veteran's currently diagnosed tension headaches to be less likely than not related to service. Further, even if there were some nexus, the Veteran would be ineligible for VA compensation due to her dishonorable discharge during the period for which she was treated for headaches in service. 

The Board has considered the Veteran's lay statements regarding her symptoms and acknowledges the Veteran's competency to report her symptoms. Layno, 6 Vet. App. 465. However, the Board finds the medical opinions of the VA examiners to be more credible. 

The Board has also considered the possibility of the Veteran's tension headaches as secondary to her service-connected PTSD. However, as above, the April 2016 examiner concluded that there was no subjective or scientific evidence to conclude that the Veteran's tension headaches could be pathophysiologically relate to the Veteran's service-connected PTSD. As such, the Veteran's claim for secondary service connection must be denied.

The preponderance of the evidence is against the claim and the doctrine of reasonable doubt is not for application. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 55-57 (1990). As such the Veteran's claim must be denied.


ORDER

1. Service connection for fibromyalgia, to include as secondary to PTSD, is denied.

2. Service connection for sexual dysfunction, to include as secondary to PTSD, is denied.

3. Service connection for chronic tiredness is denied.

4. Service connection for a neurological disability, to include as due to exposure to contaminated water at Camp Lejeune, is denied.

5. Service connection for a gastrointestinal disorder and hiatal hernia, to include as secondary to PTSD, is denied.

6. Service connection for tension headaches, to include as secondary to PTSD, is denied.




____________________________________________
Cynthia M. Bruce
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs